UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Twin City Pipe Trades Service             Civil No. 12-1125 (PAM/FLN)
Association, Inc., a Minnesota
non-profit corporation,

       Plaintiff,

v.                                     **MEMORANDUM AND ORDER**

Frank O'Laughlin Plumbing
& Heating Company, a Minnesota
corporation d/b/a O'Laughlin
Plumbing & Heating,

       Defendant.

---

This matter is before the Court on Plaintiffs' Motion for Summary Judgment. For the reasons that follow, Plaintiffs' Motion is denied and summary judgment is awarded in favor of Defendant.

**BACKGROUND**

Plaintiff Twin City Pipe Trades Service Association brought this action alleging that Defendant Frank O'Laughlin Plumbing & Heating Co., a family-owned company that provides plumbing and heating services in the Winona area, failed to pay fringe benefits to Plaintiff's beneficiaries, Plumbers and Pipe Fitters Local 6.

The facts are largely uncontested. O'Laughlin first entered into a collective bargaining agreement with Local 6 in 2000. The CBA requires O'Laughlin to contribute to

employee benefit funds for all pipe work performed by its employees. The iteration of the CBA at issue provides as follows:

> This Agreement shall be in full force and effect from the date hereon [December 1, 2009] to and including the 30th day of April 2011. Either party shall notify the other in writing ninety (90) days prior to the expiration date of the intent to cancel or amend this Agreement, or to renegotiate a new Agreement. Otherwise, this Agreement shall remain in effect from year to year thereafter.

(Hansen Aff. Ex. 1 (Docket No. 28).)

On January 27, 2011, O'Laughlin owner, Kim O'Laughlin, sent a letter to Local 6 stating as follows:

> This letter is to inform you that Frank O'Laughlin Plumbing & Heating Co. Winona MN, 55987. Will be terminating its existing work agreement with Local #6 Plumbers & Fitters Effective January 31 2011.

(Henderson Aff. Ex. 11.) It is undisputed that Local 6 received the termination letter within the 90-day termination period. More importantly, Steven Pettersen, a representative of Local 6, testified that he understood that the letter served as O'Laughlin's notice of termination:

> Q: Did you ever have discussions with Kim O'Laughlin about O'Laughlin Plumbing disassociating itself with [the union]?
>
> A. Well, I got the letter. He called me, he said he was going to do that.
>
> Q: So, he said, you understood him to say I'm out of the – I'm not going to be involved in another union contract, and I'm out of the association?
>
> A: Yeah, yes.
>
> Q: Did you try to assuage him otherwise?

>A: Not – no.
>
>Q: No?  And why would you not do that?
>
>A: Because Kim had made up his mind . . . .

(Pettersen Dep. (Docket No. 30) at 16.)

Despite this apparent meeting of the minds, Plaintiff now argues that O'Laughlin did not properly terminate the CBA.  Plaintiff points to four facts in support of its position.  First, as noted, the letter indicates a termination date of January 31, 2011, rather than April 30, 2011.  O'Laughlin explained that the letter's stated termination date was intended to reflect compliance with the 90-day notice period, not an intention to terminate as of January 31, 2011.  Second, O'Laughlin continued to make contributions for the remainder of 2011, even though the CBA purportedly expired on April 30, 2011.  Kim O'Laughlin explained that he did so voluntarily as a "gesture of good will."  (Kim O'Laughlin Aff. (Docket No. 21) ¶ 9.) Third, in December 2011, O'Laughlin sent another letter to Local 6 stating:

>This letter is to inform you that Frank O'Laughlin Plumbing & Heating Co. Winona MN, 55987.  We will be terminating all existing work agreement with Local # 6 Plumbers & Pipe fitters effective January 1, 2011.  We will not be employing any union member, paying any dues at that time.

(Henderson Aff. (Docket No. 16) Ex. 12.)  Kim O'Laughlin explained that he sent the letter to reiterate that the CBA was no longer in effect.  (Kim O'Laughlin Aff. ¶ 11.)  O'Laughlin does not explain why the letter indicates an effective date of January 1, 2011, which is inconsistent with the date referenced in the first letter.  Finally, O'Laughlin engaged in several CBA negotiations after the alleged termination, which Plaintiff contends evinces

3

O'Laughlin's intent to be bound by the CBA. Corey O'Laughlin explained that he attended the meetings to see if the parties could reach a special deal that would have brought O'Laughlin back into a CBA with Local 6. (Corey O'Laughlin Aff. ¶ 6.) The negotiations were unsuccessful.

Plaintiff argues that because O'Laughlin did not properly terminate the CBA, O'Laughlin is bound by the most recent CBA, which expired on April 30, 2013. It is unclear whether Plaintiff believes that O'Laughlin is bound a subsequent CBA, if there is one. If bound by the CBA, it is undisputed that O'Laughlin is in arrears with respect to fringe benefit contributions. Plaintiff now seeks summary judgment on its claim. O'Laughlin did not formally move for summary judgment, but requests summary judgment in its favor if the Court finds that the CBA was properly terminated.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. at 323; Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

Under ERISA, employers bound by a collective bargaining agreement are required to make contributions to the underlying pension plan "in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Plan fiduciaries, such as Plaintiff here, may sue employers to collect any unpaid contributions. 29 U.S.C. §§ 1132(a)(3), (g)(2).

Courts have traditionally limited the types of defenses available to employers in cases involving non- or delinquent payment of plan contributions. Laborers Pension Trust Fund–Detroit and Vicinity v. Interior Exterior Specialists Constr. Grp., 394 F. App'x 285, 289-90 (6th Cir. 2010). The Ninth Circuit, for example, has held that the purported termination of the CBA is not a defense to a suit seeking contributions pursuant to the CBA. Carpenters Health and Welfare Trust Fund v. Bla-Delco Constr., Inc., 8 F.3d 1365, 1369 (9th Cir. 1993). In contrast, the Sixth Circuit has acknowledged that although "many contract defenses are unavailable in collection actions, trust funds are not entitled to 'enforce a nonexistent contractual obligation,' at least where it is evident upon 'a cursory review of the parties' actions' that the contract has been terminated." Laborers Pension Trust, 394 F.

App'x at 290 (citations omitted). This Court recently adopted the Sixth Circuit's approach, holding that the "termination defense" is available to employers. Heimerl v. Tech Elec. of Minn., Inc., No. 12-cv-612, 2013 WL 1364249, at *5-6 (Apr. 4, 2013) (Nelson, J.). For a termination to be effective, a "cursory" inquiry must show that the employer "unequivocally" communicated the intent to withdraw from the CBA. Laborers Pension Trust, 394 F. App'x at 290.

The Court finds that O'Laughlin's January 27, 2011, letter unequivocally expresses O'Laughlin's intent to terminate the CBA. (See Henderson Aff. Ex. 11 ("We will be terminating all existing work agreement with Local # 6 Plumbers & Pipe fitters[.]").) The only questionable aspect of the letter is the noted termination date of January 31, 2011, which O'Laughlin adequately explained was meant to convey compliance with the 90-day notice period. Even without that explanation, the date does nothing to undermine O'Laughlin's clearly expressed intent to terminate the CBA. Indeed, the record shows that Local 6 received the letter and understood it to mean that O'Laughlin wanted out of the CBA. (Pettersen Dep. at 16.)

As a result of the unambiguous termination, the CBA expired on April 30, 2011. O'Laughlin's subsequent conduct does not somehow invalidate that termination. It is perhaps extraordinary that O'Laughlin voluntarily continued to make payments until the end of 2011, but the Court will not penalize O'Laughlin for doing something decent and generous for its employees. Similarly, the fact that O'Laughlin engaged in negotiations with Local 6 after the termination does not undermine or negate the termination. To the contrary, the

negotiations support the finding that the CBA had been terminated, because the parties would not have been negotiating the terms of an existing agreement. As to the second letter, the Court agrees with Plaintiff that it is confusing, but it does not undo the valid termination that occurred many months prior.

O'Laughlin is a small company that tried to do the right thing and made some missteps in the process. These missteps, however, are not enough to negate its unequivocal termination of the CBA.

**CONCLUSION**

Because O'Laughlin properly terminated the CBA, Plaintiff's claim fails and summary judgment is awarded to O'Laughlin. Accordingly, based on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for Summary Judgment (Docket No. 12) is **DENIED**; and

2. The Complaint is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 13, 2013

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge